TUCKERTON RAILROAD COMPANY, PROSECUTOR, v. STATE BOARD OF ASSESSORS.

Argued February 21, 1907—Decided June 10, 1907.

Section 5 of the act of March 29th, 1905, entitled "An .act to abolish the state board of taxation, and to create in lieu thereof a board for equalization, revision, review and enforcement of tax assessments" (*Pamph. L.* 1905, *p.* 126), does not give jurisdiction to the state board of equalization, established by this act, to review the action of the state board of assessors respecting the valuation of franchises and property used for railroad and canal purposes.

On *certiorari.*

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutor, *Herbert A. Drake.*

For the respondents, *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

PITNEY, J.   Under the revised "Act for the taxation of railroad and canal property" (*Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324, *pl.* 212) and its recent supplements (*Pamph. L.* 1905, *p.* 189; *Pamph. L.* 1906, *pp.* 121, 220, 571), the state board of assessors, on November 1st, 1906, valued and assessed the main stem and franchise of the prosecutor at the sum of $205,700, and its tangible personal property at the sum of $20,170.   Afterwards, on complaint of the prosecutor, the board reviewed its assessment upon the main stem and franchise, and reduced the same to $180,000.   To this amount was added the valuation of the tangible personal property, and upon the aggregate valuation a tax was levied at the average rate of taxation as prescribed by chapter 82 of the laws of 1906.   *Pamph. L., p.* 121.

To review this tax the present writ of *certiorari* was allowed under section 13 of the act of 1888 above referred to. *Gen Stat., p.* 3328.   This section prescribes that if any company or person assessed, or if the attorney-general on behalf of the state, or if the authorities of any taxing district, shall desire to contest the validity or amount of any tax levied upon property under the provisions of the act, such contest shall be made by *certiorari,* and that upon such writ relief may be had as well in cases where it is claimed that the amount of tax is excessive or insufficient as in cases where it is claimed that the principle upon which the assessment is made is erroneous.

Upon the argument here the learned attorney-general contends that this procedure by *certiorari* is in effect dispensed with by the force of chapter 67 of the laws of 1905. *Pamph. L., p.* 123.   This act is entitled "An act to abolish the state board of taxation and to create in lieu thereof a board for

equalization, revision, review and enforcement of tax assess-ments." The state board of taxation thus displaced was origi-nally established by the act of March 19th, 1891. *Pamph. L., p.* 189; *Gen. Stat., p.* 3344. Prior to the enactment of chapter 67 of the laws of 1905 its powers and duties were defined by the revised "Act for the assessment and collection of taxes." *Pamph. L.* 1903, *p.* 394; *Pamph. L.* 1903, *p.* 415, § 32, &c. By section 34 of the latter act it was provided that where complaint was made to said board, on or before the 1st day of April following the assessment, by any person or corporation aggrieved by the assessment of property, the board should have power to review and correct the action of the local assessors or other taxing officers, and of all boards of tax review, by reducing or increasing such assessment, if the tax had not been paid, &c.

But manifestly this procedure applied only to taxes levied under the General Tax act, of which this section was a part, and by section 3, paragraph 8, of the same act there were exempted from taxation under its provisions "all offices and franchises, and all property used for railroad and canal pur-poses, the taxation of which is provided for by any other law of this state." · At this time, and ever since the year 1884, the taxation of railroad and canal franchises, and of property used for railroad and canal purposes, was subjected to the jurisdiction of the state board of assessors by the "Act for the taxation of railroad and canal property."

By chapter 67 of the laws of 1905 the personnel of the state board of equalization, &c., was changed, and their powers to some extent modified. By section 5 of this act (which may be deemed to have taken the place of section 34 of the General Tax law of 1903) it was provided that where complaint shall be made to said board on or before the 1st day of April following the assessment of property of any kind, whether belonging to individuals, corporations, rail-roads or canals, said board shall have power to review and correct the action of the local assessors or other taxing officers, and of all boards of tax review, by reducing or increasing such assessment, &c.

The argument is that the mention here of "property of any kind, whether belonging to individuals, corporations, railroads or canals," indicates a legislative purpose to extend the jurisdiction of the state board of equalization, and to make it apply to property other than such as is taxable under the General Tax act of 1903. With this view we are unable to agree. It seems that section 5 of chapter 67 of the laws of 1905 does no more than to clearly express what was implied in section 34 of the Tax law of 1903, viz., that an assessment of taxes upon property of any kind, and by whomsoever owned, was subject to a review by the state board of taxation, so long as the property was subject to taxation under the general act. Irrespective of the kind of property, and irrespective of its ownership, whether belonging to individuals or to railroad or canal corporations, property was subject to taxation under that act unless it was used for railroad and canal purposes.

In our opinion, section 5 of *Pamph. L.* 1905, *p.* 126, does not give jurisdiction to the state board of equalization to review the action of the state board of assessors respecting the taxation of franchises and property used for railroad and canal purposes, and this principally for the following reasons:

*First.* Under the view expressed by this court in *Passaic Water Co.* v. *Paterson,* 27 *Vroom* 471, the language of the enactment suggests that it was designed to reach only those species of property that are usually owned both by individuals and by corporations, and not that other species known as franchises, which are owned by corporations almost exclusively.

*Secondly.* The revisory power of the state board of equalization is "to review and correct the action of the local assessors or other taxing officers, and of all boards of tax review." In our opinion, the "other taxing officers" here referred to are other *local* taxing officers, and the "boards of tax review" are boards that exercise an appellate review of local assessors and other local taxing officers. By the "Act for the taxation of railroad and canal property" (*Gen. Stat., p.* 3328, *pl.* 223) the state board of assessors is required to

review its own assessments upon the complaint of any company or person aggrieved, or of the attorney-general, or any member of the board on behalf of the state. But this is a mere revision, and not an appellate review. The only appeal provided for by that act from the action of the state board of assessors is the review by this court on *certiorari* under section 13. We therefore do not think the state board of assessors is a "board of tax review" within the meaning of section 5 of the act of 1905.

And *thirdly.* The legislative policy for years has been to subject railroad and canal franchises, and property used for railroad and canal purposes, to one scheme of taxation, under one bureau of the state government, and property not so used to another scheme of taxation, under local officers, subject to a review by another bureau of the state government. It would require clear language to show a legislative intent to subject the action of one of these state bureaus to the review of another and co-ordinate state bureau. We find no such intent manifested in the section in question. Full force and effect may be given to all its language by confining the review to such tax assessments as are to be made under the General Tax law of 1903.

This brings us to the merits. The Tuckerton railroad is about twenty-nine miles long, is subject to mortgage bonds for nearly $100,000, and has about $445,000 of preferred stock and about $105,000 of common stock issued and outstanding. Its gross earnings for the year ending December 31st, 1905, were about $59,000. For the year 1903 they were about $64,000, and for the year 1904 about $61,000. It is argued that while normally a railroad should have net earnings equivalent to at least thirty-five per cent. of its gross earnings, yet the circumstances of this railroad are exceptional, and that its net earnings are practically only about $6,000 per annum. But an examination of the official reports of the company for several years past, which are introduced in evidence in its behalf, shows that the actual net earnings have been and are greater than are indicated by these reports; that considerable amounts out of the gross earnings have been

annually devoted to the betterment of the property in the rehabilitation of its roadbed by taking out old rails and putting in new high-class steel rails, &c. The charging of these betterments to earnings has reduced the apparent net earnings for the time. Without intending to concede that the net earnings of the company are the sole criterion for estimating the value of its franchise and main stem, we content ourselves with saying that the fact just mentioned deprives the argument of counsel for the prosecutor, drawn from the item of "net earnings," of much if not all of its force.

The state board of assessors valued the main stem and franchise at $180,000. The prosecutor claims that their true value is no more than $130,000. A review of the evidence convinces us that the finding of the state board was reasonable, and not based upon any wrong principle.

The tax under review should therefore be affirmed, with costs.